No. 24,346.

F. M. DUNN et al., *Appellees,* v. T. E. ARBUCKLE, THE BANKERS MORTGAGE COMPANY et al., *Appellants.*

### SYLLABUS BY THE COURT.

ACTION—*Misjoinder of Causes of Action.* Several plaintiffs brought an action and complained that each was induced to buy stock in a corporation by fraudulent representations, and asked for the cancellation of their individual subscriptions and the return of the money which each had paid for the stock, and it appeared that the sales were distinct and separate transactions made at different times and by different defendants under varying circumstances, to the different plaintiffs, and where the causes of action, although somewhat similar in·kind, do not affect all the parties, *held,* that the plaintiffs may not unite the several causes of action in the same petition.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed March 10, 1923. Reversed.

*Leonard S. Ferry,* of Topeka, *J. S. Simmons,* and *Stuart Simmons,* both of Hutchinson, for the appellants.

*Carr W. Taylor,* and *John H. Connaughton,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by F. M. Dunn and five other plaintiffs against the Bankers Mortgage Company and the directors and agents of that company asking that certificates of stock, which had been issued and sold to different plaintiffs at different times by different salesman named as defendants, be canceled and the money paid therefor be recovered with interest. The defendants contend that each of the sales was a separate transaction, and each of the plaintiffs sets forth a separate cause of action in his favor

against the corporation, its directors and agents. The defendants filed separate demurrers upon the ground that the several causes of action were improperly joined, and, this demurrer being overruled, the defendants appeal.

In the first cause of action it is alleged that after the organization of the mortgage company it entered into an agreement with the Central Trust Company, that the trust company should issue all the stock subscribed for and sold by the mortgage company, with a certificate of the trust company stamped upon its face, stating that the trust company was the custodian of ninety-five per cent of the par value of the stock, and that the mortgage company was to deliver its stock book with its corporate seal to the trust company for the purpose of carrying out the agreement. It is alleged that the mortgage company, however, procured another stock book and proceeded to sell stock without requiring the cash to be paid therefor, and without the certificate of the trust company as required by the contract. It was then alleged that the trust company, learning of this action, notified the mortgage company that it would no longer act as trustee. There is also an allegation that the mortgage company failed to file proper affidavit with the secretary of state, required by law at the time, showing the amount of cash paid for stock, the number of notes obtained, and the dates when due; also that stock had been issued in exchange for promissory notes on the representation that the stock was worth more than par, but that the difference between the par value of the stock and the amounts sold above par should be divided among the defendants. Another charge is that two of the stock salesmen were taken into the company for the purpose of assisting in the disposal of the stock, and that they procured Arbuckle to make fictitious purchase of a certain amount of stock in exchange for his promissory note, agreeing to pay Arbuckle one-fifth of the profits realized from the sales of the stock which they made; that sales were made by these agents upon representations that all of the stock issued by the company had been sold for cash, and that ninety-five per cent on each share so sold was paid into the Central Trust Company from each of the plaintiffs, and that a large part of it had been sold without the knowledge of the trustee. It is charged that the representations made to them by the defendants and agents were false, and known to be false, and that approximately $105,500 of the stock was not paid for but had been transferred to them for nonnegotiable notes without obtaining any cash

Dunn v. Mortgage Co.

therefor, by which the capital stock of the company was reduced by that amount. They state that by reason of the foregoing facts they were fraudulently induced to purchase stock and part with their money, that they elect to rescind their subscriptions, tender back their certificates of stock, and pray for a return of the money received from each with interest.

In the second cause of action it is alleged that the defendants conspired together for the purpose of defrauding each of the plaintiffs out of additional money through their different agents representing that the mortgage company was in a prosperous condition, its earnings large, and the stock worth $150 a share in the open market, that it would soon be selling for $200, and that these agents offered to enter into a written agreement with each plaintiff to sell his stock for $162.50 within a short time; and relying on these statements, they purchased certain shares from the mortgage company, one of the plaintiffs purchasing five shares and paying $750 therefor, and also another certificate for fifteen shares for which he paid $2,250, making in all $3,000 for the twenty shares of stock. It is also alleged that F. M. Dunn relied on the same representations and was induced to buy and pay for five shares, for which he paid $1,500, and ten other shares for $1,500; that the last ten shares bought by Dunn were by him surrendered to the defendants upon false representations that they had sold ten shares of the first stock that had been purchased by Dunn, and represented that that stock had been sold for $112.50 per share, an advance per share of $12.50 upon the first stock sold. This was done to induce Dunn to believe that the stock was becoming more valuable; that they accounted to plaintiff for $1,125 which should have represented ten shares of the first stock purchased. A certificate was issued to Ed Bridgeman for ten shares, for which he paid $1,500. G. A. Thompson bought thirty-five shares, which were retained by the company, and he gave notes for $3,500, $100, and $750, dated May 20, 1920, in the aggregate, $5,250. It is alleged that no stock was in fact delivered to Thompson at the time he executed the promissory notes, but that Kell and Moon and other salesmen sold the stock to Thompson for all of the defendants, including themselves, and took promissory notes instead of cash, the scheme being to avoid the provisions of the blue-sky law.

It is alleged that the representations in respect to these sales were false and fraudulent, that the company was not in a prosperous condition, was earning no income, and that by reason of the gross mis-

management of the company its stock was worth less than par, and that Arbuckle was not a director of the company as the defendants represented, but his name was placed on the letter heads of the stationery, and that it was a fraudulent scheme to fleece the plaintiffs and other persons. It was alleged that much of the stock was issued in exchange for notes instead of cash, thereby evading compliance with statutory requirements, and that it was done for the profit of the defendants and to the injury of plaintiffs. They ask that each transaction recited be rescinded, the consideration paid by each plaintiff be returned to him, and where notes have been given by plaintiffs that they be returned if still in the possession of defendants, and if not, that plaintiff recover judgment for the amount of the notes and the interest which had accrued thereon.

There was a third cause of action, in which the appointment of a receiver was asked for, but this cause was taken out of the case by a ruling of the court.

On the demurrers to the first and second causes of action the court first ruled that there was a misjoinder of the causes of action, for the reason that all of the plaintiffs were not interested in each cause of action, but later held that as there was a general charge of conspiracy the demurrers would be overruled.

The only question presented upon the appeal is whether there is a misjoinder of causes of action. The code provides:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of action so united must affect all the parties to the action, except in actions to enforce mortgages or other liens." (Gen. Stat. 1915, § 6979.)

From the petition it appears that each sale of stock to the different plaintiffs was a separate transaction. The sales were made by different defendants at different times during a period of about three months, and each defendant salesman made alleged misrepresentations to effect a sale. Each plaintiff had a distinct cause of action against the individual defendants who wronged him to recover back the money which he had paid. He had a cause of action against the mortgage company to cancel the subscription to capital stock and the certificate issued and for a refund of the money fraudulently obtained. The first cause of action is one for a rescission of the sales of stock, and the second, among other things, asked for a recovery on sales of stock purchased by others than plaintiffs from

the mortgage company. All of the plaintiffs are not interested alike in the two causes of action pleaded. Under the allegations of the petition the purchases were separate transactions, in which other plaintiffs were not concerned, and which did not affect all the parties. While there were some broad averments of conspiracy to defraud, they did not unify nor enlarge the causes of action set forth by the different plaintiffs. It is said that the action is one in equity in which a more liberal rule applies in uniting causes of action, but the distinctions between actions at law and equity have been abolished as far as forms of action are concerned and the code provision that causes of action except as to mortgages and other liens cannot be united in one petition, unless they all arise out of one transaction and all are connected with the same subject of the action, and each cause of action affects all of the parties, applies to an action equitable in its nature as well as to an action at law. In a case where a trustee in bankruptcy brought an action to set aside several conveyances of land made by the bankrupt, to defraud creditors, it was held that as the subject of the action in one cause, a particular tract of land, differed from the subject of another cause, being another tract, and that as they did not all affect all of the parties to the action, the causes could not be joined. (*Harrod v. Farrar*, 68 Kan. 153, 74 Pac. 624.) In a somewhat similar case, where a grantor had conveyed two tracts of land each to a different person and subsequently the heirs of the grantor brought an action against both grantees, asking to cancel the conveyances and to partition the tracts among the heirs, and it was ruled that the fact that there was a common grantor did not unify the interest conveyed nor make the setting aside of the deeds and the recovery of the land a single cause of action, and further that the fact that the remedies sought against the different defendants belonged to the same general class did not justify a joinder. (*Griffith v. Griffith*, 71 Kan. 547, 81 Pac. 178; see, also, *Jeffers v. Forbes*, 28 Kan. 174; *Haskell County Bank v. Bank of Santa Fe*, 51 Kan. 39, 32 Pac. 624; *A. T. & S. F. Rld. Co. v. B. of Comm'rs of Sumner Co.*, 51 Kan. 617, 33 Pac. 312; *Benson v. Battey*, 70 Kan. 288, 78 Pac. 844; *Gillet v. Investment Co.*, 111 Kan. 755, 207 Pac. 843.)

Plaintiffs cite and rely on *Bosher et al., v. R. & H. Land Co. et al.*, 89 Va. 455, as an authority sustaining a joinder. There several stockholders who had been induced by fraudulent representations contained in a prospectus to subscribe for stock in a corpora-

tion, brought an action against the receiver of the corporation to enjoin the collection of unpaid subscriptions and cancel them, and it was held that as the plaintiffs were defrauded in the same way by the prospectus they might sue jointly. The ruling is apparently based on the theory that a different rule applies in an equity case than in actions at law. No such distinction exists under our code. Even in that case the court said:

"Where the fraudulent acts complained of are different and unconnected, the joinder is not allowed, because they are distinct and separate, although similar, as where agents procure subscriptions by fraudulent representations at different times and under varying circumstances, although similar in their general scope, because the defense is different and the acts are different and distinct, and the proofs are necessarily different, each dependent upon its own circumstances." (p. 464.)

Under the rule declared in many decisions in this state there was a manifest misjoinder of causes of action alleged in the petition, and hence the order overruling the demurrers to the same is reversed and the cause remanded for further proceedings.

HOPKINS, J., not sitting.