No. 34,193

The City of Ellsworth, *Plaintiff*, v. Walter E. Wilson, State
Treasurer (Substituted for Jibo Hewitt) et al., *Defendants*.

(87 P. 2d 611)

Opinion filed March 4, 1939.

*George D. Miner*, of Ellsworth, for the plaintiff.

*Jay S. Parker*, attorney general, and *Paul L. Aylward*, of Ellsworth, for the defendants.

The opinion of the court was delivered by

Wedell, J.: This is an original proceeding in mandamus to compel the state treasurer to make distribution of the county and township road fund derived from special taxes on motor vehicles and motor fuels in accordance with a resolution adopted by the board of county commissioners of Ellsworth county on November 18, 1935. The resolution was passed under authority of section 1, chapter 94, Laws of 1933, Special Session. (G. S. 1935, 68-424.)

On July 5, 1938, the board of county commissioners of Ellsworth county adopted a resolution rescinding the former resolution. The plaintiff city contends the county had no power or authority to rescind the former resolution and that the state treasurer is compelled to disburse the fund in accordance with the original resolution.

The contending parties in reality are the city of Ellsworth and the county of Ellsworth. Certain townships within the county have intervened for the purpose of testing the constitutionality of G. S. 1935, 68-424. We shall first treat the contentions of the city and the county, and shall refer to them in that manner. G. S. 1935, 68-424, provides:

"That thirty-five percent or so much thereof as may be necessary of the county and township road fund, derived from special taxes on motor vehicles and on motor fuels, as provided in subsection (2) of section 1 [68-416] of

chapter 241, Laws of 1933, and amendments thereto, which is $900,000 per quarter or $3,600,000 per year, may be, upon resolution duly adopted by the board of county commissioners of any county, set aside to be used for road and highway purposes in the construction, maintenance, and operation of county roads and township roads and city streets, avenues or boulevards by the county or city respectively, or to pay bonds and interest thereon issued for such purposes as hereinafter provided: *Provided,* That preference shall and must be given for labor in such construction, maintenance and operation, to persons on the relief rolls of the county who are physically able to and will work on such construction, maintenance and operation: *Provided further,* That any county taking advantage of this act shall expend fifty percent of the county's share of said funds set aside or raised under this act on township roads except in counties operating under the county unit system of highways.

"The thirty-five percent shall be, after the resolution above provided for has been adopted, apportioned among the county and the cities of the county on a basis of population, the population as determined by the federal census of 1930 to be the populations used hereunder, and the population of the county outside the limits of cities to be considered as the population of the county. Said thirty-five percent shall be distributed and paid over to the county and cities, or held to pay bonds as hereinafter provided, by the state treasurer at the quarterly distribution as provided by subsection (2) of section 1 [68-416] of chapter 241, Laws of 1933, and amendments thereto. The remaining sixty-five percent shall be distributed to the county and by the county distributed to the county and township as provided by subsection (2) of section 1 [68-416] of chapter 241, Laws of 1933, and used for the purposes therein specified. [L. 1933, ch. 94, § 1 (Special Session); Nov. 23.]"

The original resolution of the county provided:

"Be it resolved by the board of county commissioners of Ellsworth county, Kansas, in regular session convened:

"1. That thirty-five percent of the county and township road fund derived from special taxes on motor vehicles and on motor fuels, as provided by chapter two hundred forty-one of the Laws of 1933 (section 68-416) of the 1933 Supplement to the Revised Statutes of Kansas, which amounts to and is the sum $900,000 per quarter or $3,600,000 per year, be set aside to be used for road and highway purposes in the construction, maintenance and operation of the county roads and township roads and city streets, avenues, and boulevards by the county of Ellsworth, or the respective cities therein.

"2. That preference shall be given for labor in such construction, maintenance, and operation to persons on the relief rolls of the county who are physically able to and will work on such construction, maintenance, and operation.

"3. That said thirty-five percent shall be apportioned among the county of Ellsworth and the respective cities therein on the basis of population, the population as determined by the federal census of 1930 to be the population used hereunder, and the population of the county outside the limits of the cities to be considered as the population of the county, and said thirty-five

percent of said road fund to be distributed and paid over to the county and cities by the state treasurer at the quarterly distribution as provided by subsection 2 of section 1 of chapter 241 of the Laws of 1933 hereinbefore mentioned, and amendments thereto.

"4. That this resolution is adopted under and by virtue of the authority granted by section 1 of chapter 94 of the Laws of 1933 (68-424 of the 1933 Supplement to the Revised Statutes of Kansas).

"5. That this resolution shall not become effective until the 1st day of April, 1936, and shall not affect any apportionment of the county and township road fund prior to the 1st day of April, 1936.

"6. That a copy of this resolution shall be transmitted by the clerk of the county of Ellsworth to the treasurer of the state of Kansas."

The rescinding resolution, after reciting the previous enactment of the original resolution, reads:

"Now, therefore, be it resolved by the board of county commissioners of Ellsworth county, Kansas, that said resolution apportioning to the cities of Ellsworth county, Kansas, a share of the county and township road fund be and it is hereby repealed and canceled as of January 1, 1939, and that the motor vehicle and motor-vehicle taxes shall thereafter be distributed and paid to the county and township road fund in the same manner and in accordance with the provisions of 68-416 R. S. of Kansas, 1935.

"The board of county commissioners finds the cities of Ellsworth county, Kansas, receiving a portion of the funds derived from motor vehicle and motor-vehicle fuel taxes have not created any indebtedness or issued any bonds under the provisions of 68-425 R. S. of Kansas, 1935."

The city and county stipulated as follows:

". . . that the facts with regard to the allegations contained in the answer of the defendants as follows:

"1. The plaintiff expended the money received under the provisions of G. S. 68-424 in the construction, maintenance and operation of the city streets and avenues.

"2. The moneys received by the city of Ellsworth have been disbursed principally to three employees of the city as salary and wages. These three employees were Mr. Tanton, who had made application for relief in Ellsworth county on November 21, 1933, but whose application was rejected. Another, Mr. Holtman, received relief from Ellsworth county up until April, 1936, at the time he was given employment by the city. Another, Mr. Ruetz, has been a city employee for a number of years and is employed as a street cleaner and has never been on the relief rolls. The salaries received by these persons amount to approximately sixty dollars ($60) per month.

"3. The county poor commissioner was not requested to furnish the names of persons on relief rolls to the city at any time and in 1937 the poor commissioner spoke to the city clerk and requested a report of the expenditures of the relief highway fund with the names of the persons receiving the fund. At that time he had some conversation with the city clerk relative to the status of the persons above named who were then receiving all of the moneys from

the fund in question, and advised the city clerk that Mr. Holtman was on relief and eligible for employment under the fund and that Mr. Tanton was registered in the national unemployment service but was not on relief and not eligible. The county poor commissioner at that time also verbally told the city clerk that Mr. Ruetz was registered with the national unemployment service but was under the impression that the Mr. Ruetz in question, employed by the city, was another Mr. Ruetz. Mr. Ruetz has never been on the relief rolls of Ellsworth county, Kansas. The city never made any report of the expenditure of the funds or the persons employed and paid out of this fund.

"4. There are four other cities in Ellsworth county receiving relief highway funds and the city of Wilson is the only one that has taken any labor from the relief rolls of Ellsworth county, Kansas.

"5. The city of Ellsworth has on its books set up a relief highway fund and paid out of it the salaries above mentioned and a few small items for miscellaneous street work.

"6. The city of Ellsworth in the budget and financial statement for the tax year 1937 shows that for the year January 1, 1936, to December 13, 1936, the moneys received were credited to the street fund and makes no budget for relief highway fund for the ensuing year of January 1, 1938, to December 31, 1938. Said budget further shows that the funds received from January 1, 1937, to June 30, 1937, were credited to the street fund.

"7. The city of Ellsworth, in its budget for 1938 shows that the funds from January 1, 1937, to June 6, 1938, were credited to a relief highway fund and disbursed therefrom; that no funds are budgeted from the relief highway fund from January 1, 1938, to December 31, 1939.

"8. That the cities of Kanopolis, Lorraine and Holyrood in Ellsworth county have never set up any relief highway fund or used the proceeds for labor on the relief rolls and the money has gone into the regular street fund; that the city of Wilson has applied said funds to a relief highway fund and expended the money for relief projects.

"9. That none of the cities have issued any bonds under G. S. 68-425, 1935.

"10. That the funds disbursed to the cities amount to four thousand nine hundred dollars ($4,900) and the city of Ellsworth receives about two thousand three hundred dollars ($2,300) per year of such funds."

Under a stipulation subsequently filed in this court it is agreed between the city and the county that under the rescinding resolution the county intended to make that resolution effective commencing with the April, 1939, apportionment and disbursement, and that the state treasurer is authorized to apportion and distribute the January, 1939, funds in the same manner as last apportioned and distributed by him.

The city insists the county was without power or authority to enact the repealing or rescinding resolution. Its contention is based upon the theory counties can exercise only those powers expressly conferred and such powers as are necessarily or fairly implied in, or

which are incidental to the powers expressly granted. In support of that contention it cites such authorities as *Felker v. Elk County,* 70 Kan. 96, 78 Pac. 167; *Brown v. State,* 73 Kan. 69, 84 Pac. 549; *State, ex rel., v. Mowry,* 119 Kan. 74, 77, 237 Pac. 1032. The correctness of that principle is conceded by the county. The city, however, urges G. S. 1935, 68-424, granted the county no express authority to rescind its former resolution and that no such authority is necessarily or fairly implied. It believes this court has fully determined the correctness of that contention in its interpretation of other statutes in *State, ex rel., v. Bentley,* 96 Kan. 344, 150 Pac. 218, and *Brown v. Arkansas City,* 135 Kan. 453, 11 P. 2d 607.

In the first case cited it was held:

"After a city commission by proper resolution under chapter 122 of the Laws of 1915 decides to bring its public library under the provisions of chapter 121 of the Laws of 1903 and acts supplementary thereto and amendatory thereof, such acts then govern and their operation cannot be taken away by rescinding the former resolution." (Syl. ¶ 1.)

The decision in that case turned entirely upon the question of the construction of the statutes relating to public libraries. The pertinent statutory provision on which the decision hinged was its closing requirement that after the adoption of the resolution the library was required to be *governed* and *maintained* in accordance with the 1903 act and amendments thereto. The library law therefore put it beyond the power of the incoming city commission to rescind the resolution of the outgoing commission. In other words, the new commission could not change the library law by resolution.

In the second case cited it was held:

"An implied power of a city to rescind or repeal a finding, resolution or ordinance cannot exist unless the city had been delegated legislative power to enact them in the first place." (Syl. ¶ 2.)

In that case the city possessed no authority in the first place to pass an ordinance creating a city court as, if and when it saw fit to do so. It possessed no discretion in the matter. The legislature delegated to the governing body of the city authority to determine the existence of a need for a city court. It in substance asked the city for a finding of fact upon that subject. The city made a finding the need existed. When it made the finding the city was entitled to a city court, and not before. The court became an established tribunal and functioned according to the law applicable thereto. The city attempted to repeal the ordinance which created the court while

the ordinance declaring the need for the court remained in effect. That is not this case.

In the instant case no finding by the county of the city's need for the fund in question was made a condition for the validity of the original resolution. The validity of the resolution was not made dependent upon the city's need for the fund. The statute clearly made the action of the county permissive. It was entirely discretionary with the county whether the city should receive any portion of the fund in question. The county, by resolution, could permit the city to participate in the benefits of thirty-five percent of the fund or, if it chose, in any smaller percent thereof, or in no part thereof whatsoever. Being left entirely within its discretion whether, in its administration of the fund, it would disburse any part thereof to the city, we think the county was granted the implied authority to rescind its former resolution, where no rights of the city had vested or were disturbed by reason of such resolution. The city had voted no bonds on the strength of the original resolution and none could have been voted under the act after January 30, 1935. (G. S. 1935, 68-431.)

There are other provisions of the statute (G. S. 1935, 68-424) under the authority of which the resolution was adopted, which tend to indicate the authority to rescind is necessarily or fairly implied. The statute, in part, provides:

"*Provided,* That preference shall and must be given for labor in such construction, maintenance and operation, to persons on the relief rolls of the county who are physically able to and will work on such construction, maintenance and operation."

The resolution of the county under which the city had received the disbursement embraced that express requirement. The agreed statement of facts discloses the city did not comply therewith. It could not insist upon the benefits of the resolution and violate both the statutory mandate and the requirements of the resolution under which it received the funds. We think under the conceded facts the county possessed the implied authority, if not in fact the duty, to rescind the original resolution. The fact the statute expressly required preference should be given to certain persons on the relief rolls *of the county* clearly indicates a legislative intent the fund should be utilized for the purpose of reducing the total amount the county otherwise would be obliged to provide for relief of its needy inhabitants. When it was not so used by the city the general relief

burden of the county was not reduced as it was intended by the statute and resolution it should and would be reduced. The result was the fund was not being administered as the county by resolution properly directed it should be administered. Under these circumstances we think the county was acting within its implied authority, whether such authority be deemed administrative or legislative, when it rescinded its former resolution.

Moreover, it must be remembered a writ of mandamus is discretionary and does not issue as a matter of right. It will issue only in a clear case. (*Board of Education v. Powers,* 142 Kan. 664, 666, 51 P. 2d 421.) Here it clearly appears the writ should be denied.

The plaintiff contends its motion to strike certain paragraphs contained in the answer of the county should be sustained. We have considered such portions of the answer as we think were properly pleaded and which were embraced within the stipulation.

Certain townships of Ellsworth county have intervened in this proceeding for the purpose of testing the constitutionality of G. S. 1935, 68-424. In view of the conclusion we have reached concerning the authority of the county to rescind its former resolution, it is not made to appear the rights of the townships have been adversely affected and there is no occasion to treat abstract questions of constitutionality.

The writ is denied.