No. 34,843

The State of Kansas, ex rel. Jay S. Parker, Attorney General, *Appellee*, v. The Stonehouse Drainage District, No. 1, in Jefferson County; E. J. Sturm, Ralph Baker and Kathryn Hoekstra as the Board of Directors of said Drainage District; and Frank Marsh, doing business as the Marsh Engineering Company, *Appellants*.

(102 P. 2d 1017)

 Opinion filed
June 8, 1940. 

*Walter T. Chaney* and *Lawrence J. Richardson,* both of Topeka, for the appellants.

*Jay S. Parker,* attorney general, *Eldon Wallingford,* assistant attorney general, *Warden L. Noe,* special assistant attorney general, and *James S. Lester,* of Oskaloosa, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment temporarily enjoining the defendants from proceeding with the construction of certain projected levies and improvements in a drainage district in Jefferson county.

The state's objection to the project was that defendants had set about the undertaking without obtaining the approval of the chief engineer of the division of water resources and in disregard of the statute which makes his approval a condition precedent thereto.

Defendants joined issues by raising a question of law—that the statute which purported to require the chief engineer's approval had been declared by this court to be unconstitutional *in toto,* and consequently his approval was not necessary.

The material facts were not in dispute. Some years ago, the Stonehouse Drainage District, No. 1, Jefferson county, was organized under the drainage act of 1905. (Laws 1905, ch. 215.) Although that statute has been amended from time to time, it can still be identified as G. S. 1935, 24-401 *et seq.* In the summer of 1939 the board of directors of the defendant drainage district determined that some improvements in drainage and flood protection should be undertaken. Preliminary thereto, the board's tentative plans therefor were submitted to the chief engineer of the division of water resources for his approval. That official was created by G. S. 1935, 74-506d. For reasons which seemed good to him, and which he specifically pointed out in a letter to the board, that officer withheld his approval. Subsequently the board entered into a contract with the Marsh Engineering Company for the construction of the projected improvements. That concern set about the performance of the contract, but was soon halted by this lawsuit, which the attorney general instituted under authority of G. S. 1935, 82a-305.

The pertinent section of the statute which requires the approval of the chief engineer before a drainage board can construct or improve its drainage or facilities for flood control reads, in part, thus:

"From and after the taking effect of this act it shall be unlawful for any person, corporation, drainage or levee district operating under any of the drainage or levee laws of the state of Kansas, without first obtaining the approval of plans for the same by the chief engineer of the division of water resources, to construct, cause to be constructed, maintain or cause to be maintained, any levee or other such improvement on, along or near any stream of this state which is subject to floods, freshets or overflows, so as to control, regulate or otherwise change the floodwaters of such stream; . . . And in the event any such structure is about to be constructed, is constructed, or maintained by any person or corporation without approval of plans by the chief engineer, it shall be the duty of the attorney general, on the request of the chief engineer, to file suit in a court of competent jurisdiction, to enjoin the construction or maintenance of such structure:" (Laws 1929, ch. 176, § 71; G. S. 1935, 24-1071.)

The constitutionality of this so-called conservancy statute was challenged in *Verdigris Conservancy District v. Objectors*, 131 Kan. 214, 289 Pac. 966, on the rather obvious ground that it imposed certain legislative and nonjudicial duties on the district courts and their presiding judges. This court held that the imposition of legislative and executive or administrative powers upon the judiciary of this state was not possible in view of the tripartite arrangement of Kansas government under our state constitution. Such a pronouncement set the act at naught so far as its challenged matter was concerned. Our opinion concluded thus:

"It is not necessary to go through the forty printed pages of the statute to see what would be left of it if, pursuant to section 69, the void provisions were stricken out. The special purpose of the statute was to authorize conservancy projects of great magnitude. Elimination of the composite court eviscerates the act; but assuming the purpose of the act might still be accomplished by utilizing the district court of a county, no district court has power to make a declaration of incorporation of a conservancy district, whether the district comprise one or more counties, because the grant is not of judicial power, but of legislative power." (p. 221.)

Section 69, to which reference was made in the excerpt of our opinion just quoted, reiterated a statutory rule of construction which is familiar in this state, to the effect that where a part of a statute is held unconstitutional any part of it not tinctured with such infirmity is not necessarily invalidated by such decision.

At the same session of the legislature which gave birth to the conservancy act, another statute dealing in part with the same

general subject was enacted. (Laws 1929, ch. 203.) By its terms, the approval of the chief engineer of the division of water resources (subject to irrelevant exceptions) is made a prerequisite to the construction or any change in construction of any dam or other water obstruction, or any change or diminution of the course of a stream.

In chapter 222 of the Laws of 1937, the legislature wiped out nearly all of the conservancy act of 1929, expressly repealing sections 1 to 70 and sections 72 and 73 (G. S. 1935, 24-1001 to 24-1070, and 24-1072, 24-1073), but leaving intact section 71 (G. S. 1935, 24-1071), the continued validity of which is the question of present concern.

Counsel for appellants say:

"When this court, by its decision above cited, determined the *entire act* to be unconstitutional and void, the mere fact that the legislature repealed all sections of the act except section 24-1071 gives to the section no more force or effect than it had at the time this court held the same to be unconstitutional and void." (Our italics.)

A critical examination of our opinion and decision in the cited case does not justify the assertion that we held the *entire act* unconstitutional; and if perchance we had so declared, and such declaration was broader than the legal questions we then had to decide it would have been mere dictum and not binding either on future litigants or the court if or when, as here, a precise question of law is presented for decision which was not involved in the prior litigation. In *State v. Mercantile Co.*, 103 Kan. 896, 176 Pac. 670, it was said:

"We can only decide questions which are squarely involved and squarely presented in an appeal; and if the court should now give a dogmatic negative to . . . [a question not in issue] . . , it would only be dictum, and nobody would be bound by it." (p. 897.)

See, also, *Voran v. Wright*, 129 Kan. 601, 284 Pac. 807; 15 C. J. 950-952; 7 R. C. L. 1003-1004; 14 Am. Jur. 295-296.

Did our decision in the Verdigris Conservancy District case do away with the section of the act which the legislature refrained from repealing?

In *State v. Smiley*, 65 Kan. 240, 247, 69 Pac. 199, it was said:

"The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fall. These rules are of everyday enforcement in the courts."

Applying the test just stated, it seems clear that the section of the conservancy act of 1929 which the legislature of 1937 took particular care to preserve when it repealed the other 72 sections of it was not so vitally connected with the unconstitutional features of the act that it should be judicially set at naught therewith. Surely a statutory provision which makes it unlawful for a drainage district to construct a levee or other improvement intended to control, regulate or change the drainage or flow of floodwaters without obtaining the approval of its plans therefor by the chief engineer of the division of water resources has no vital connection with the anomalous scheme set up in the same act for the erection of a conservancy district by a board of district judges, so that an adverse judicial ruling of the latter would necessarily destroy the usefulness of the former.

Counsel for defendants direct our attention to the broad powers conferred on the governing boards of drainage districts created, as was the defendant district in this case under the statute of 1905, and acts amendatory thereof and supplementary thereto, particularly G. S. 1935, 24-407. But all the acts in *pari materia* with the act of 1905 must be read and construed together; and any and all later legislative pronouncements which are germane and relevant must be given paramount significance wherever any seeming conflict between them and earlier legislation on the same general subject cannot be harmonized by logical and judicial interpretation. But we find no seeming conflict in the statutes cited. They merely show a growing legislative appreciation of the importance of drainage and flood control and of the necessity that some competent authority should exist to consider and approve the practicability of all such projects of more consequence than those excepted from such governance by G. S. 1935, 82a-304, or by 82a-310, before they should be undertaken. While some evidence *pro* and *con* was presented in the district court, it has not been abstracted, nor is it now contended that the decision of the trial court was predicated on a want of evidence or was contrary to the evidence. There is no error apparent in the record, and the judgment is affirmed.