No. 40,605

FELTEN TRUCK LINE, INC., a Corporation, and SHIP-BY-TRUCK COMPANY, INC., d/b/a GRAHAM SHIP-BY-TRUCK CO., a Corporation, on their own behalf and on behalf of 1,941 Taxpayers Similarly Situated, *Plaintiffs*, v. THE STATE BOARD OF TAX APPEALS and SAM BROOKOVER, MAURICE A. WILDGEN and PERRY OWSLEY, as Members of said Board, and JEAN EVANS, as Attorney for said Board, and ELDON SLOAN, as Director of the Property Valuation Department of the State of Kansas; RICHARD T. FADELY, as Treasurer of the State of Kansas; ADEL F. THROCKMORTON, as Superintendent of Public Instruction of the State of Kansas, *Defendants*.

(327 P. 2d 836)

Opinion filed July 1, 1958.

*Howard M. Immel,* of Iola, and *Donald S. Hults,* of Lawrence, argued the cause, and *John Jandera,* of Topeka, was with them on brief for the plaintiffs.

*Payne H. Ratner* and *D. Clifford Allison,* of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Bernard V. Borst, Gerald D. Lasswell* and *Edmund R. Learned,* all of Wichita, were with them on the brief for defendants state board of tax appeals and director of the property valuation department of the state of Kansas; *Peter S. Caldwell* was with them on the brief for defendant property valuation department of the state of Kansas; *Jean Evans* was with them on the brief for defendant state board of tax appeals; *John Anderson, Jr.,* attorney general, was with them on the brief for defendant treasurer of the state of Kansas and defendant superintendent of public instruction.

The opinion of the court was delivered by

WERTZ, J.: This is an original proceeding in mandamus brought by the Felten Truck Line, Inc., a corporation, and Ship-By-Truck Company, Inc., d/b/a Graham Ship-By-Truck Company, a corporation, on their own behalf and on behalf of 1,941 taxpayers similarly situated. The defendants are the state commission of revenue and taxation, the individual members thereof and the attorney therefor.

On July 1, 1957, the state commission of revenue and taxation, pursuant to the terms and provisions of chapter 429 of the Session Laws of 1957, was terminated and abolished, and in its stead the state board of tax appeals and the property valuation department were established. Pursuant to the terms and provisions of the act, Sam Brookover, Maurice A. Wildgen and Perry Owsley were appointed members of and Jean Evans attorney for the state board of tax appeals, and Eldon Sloan was appointed director of the property valuation department. All jurisdiction, rights, powers, duties and authority with respect to ad valorem tax administration and the assessment of state-assessed property were transferred to the state board of tax appeals or the director of property valuation. The act further provides that all pending actions or proceedings instituted against the state commission of revenue and taxation shall be prosecuted or defended by the board of tax appeals or the director of property valuation, as the case may be. The board of tax appeals, its attorney, and the director of the property valuation department have been substituted as parties defendant for the state commission of revenue and taxation, the members thereof and the attorney therefor. The defendants will hereinafter be referred to as the commission, being so designated by all parties in the original proceeding.

The purpose of this proceeding is to challenge the constitutionality of G. S. 1955 Supp., 79-6a01 et seq. placing a tax on motor carriers and also to challenge the commission's interpretation and administration of the act.

The original proceeding was filed on December 17, 1956. On the same date this court issued an alternative writ commanding the commission to accept payment of protested taxes levied under the provisions of G. S. 1955 Supp., 79-6a04 to the state treasurer for impounding in a trust fund or a special account as protested taxes.

The commission answered, challenging the right of the plaintiffs to be heard and also plaintiffs' objections to the constitutionality of

the statute and the administration thereof. Amended pleadings were filed by both parties, but they did not change the material issues originally presented. It would serve no useful purpose to present them here.

After the issues were joined the contending parties requested this court to appoint a commissioner. Mr. E. H. Hatcher, a member of the bar of this state, was appointed as commissioner with instructions that he take the evidence, make findings of fact and conclusions of law, and report thereon. The commissioner has done so most efficiently. He informed the court that if his conclusions of law were correct on jurisdictional and procedural grounds, many of his findings of fact and conclusions of law were immaterial.

We will first consider the objections made by the commission as to the class action. It first contends that this action cannot be maintained by the two named plaintiffs and on behalf of other motor carriers as a class action.

The two named plaintiffs brought this action on behalf of themselves and 1,941 taxpayers similarly situated. It is now conceded that only the two named plaintiffs and the 220 taxpayers named in plaintiffs' Exhibit C attached to the amended motion protested the payment of their taxes. Only such taxpayers have a right to relief in this action.

The commission contends that the unconstitutionality of the act in itself raises one cause of action, but the attack on the acts of the commission in assessing, levying and collecting the tax raises another cause of action. The commission presented its position before the commissioner as follows:

"One cause of action contests the legality and constitutionality of the act itself. Under the code provision permitting representative suits (G. S. 1949, 60-413), the question of the constitutionality of an act is generally considered one of '. . . common or general interest . . .' to taxpayers under the act and representative suits in such an action have been allowed by this court. The reason is clear because if a statute is in all respects unconstitutional, it is void and this is, of course, of common concern to all who have been affected by such a void statute. A different rule applies and necessarily so, to questions of administration of a taxing act. The administration of the act is its application to each individual taxpayer."

The commission's position is well taken. Only questions as to the constitutionality of the act itself may be considered in this class action.

The plaintiffs cannot be heard on questions involving the adminis-

tration of the act by the commission in a class action. If the commission did not properly evaluate the property of a taxpayer or otherwise acted improperly in administering the act, the cause of action belonged to the individual wronged. The record is clear as to the fact that various motor carriers made various complaints against various actions by the commission, none of which was common to all. G. S. 1949, 60-413 provides:

"When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

The question must be one of common or general interest. The cause of action must affect all of the parties attempted to be included as a class, and their complaints and right to relief must be common to all. (*Dunn v. Mortgage Co.*, 113 Kan. 169, 213 Pac. 655; *Oil & Gas Co. v. Holland*, 114 Kan. 863, 220 Pac. 1044; *Gillet v. Investment Co.*, 111 Kan. 755, 207 Pac. 843; *Crisler v. C. K. Packing Co.*, 181 Kan. 118, 309 P. 2d 703.)

In the case now before the court all of the plaintiffs had a common interest in the constitutionality of the statute. If the statute was unconstitutional, they were all similarly affected by the result, *i. e.*, the elimination of the particular tax statute. However, the commission's application of the act to individual motor carriers and the valuation resulting from the commission's calculation did not affect all the plaintiffs in the action and were presented more in the form of individual complaints or complaints affecting a few of the class which did not affect all.

The commission contends that this action should be dismissed because the plaintiffs had a complete, adequate and speedy remedy in the ordinary course of the law and that, therefore, plaintiffs cannot invoke the extraordinary remedy of mandamus. The commission cites G. S. 1949, 60-1121, which provides for an injunction against the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceedings to enforce the same.

The plaintiffs counter with the suggestion that they are entitled to an authoritative interpretation of the motor carriers' ad valorem tax law, at least insofar as the issues pertain to the constitutionality of the acts in question, and that the moneys paid by them under protest should not be placed out of their reach until the questions are determined. (Plaintiffs were advised by the commission, im-

mediately after paying their taxes under protest, that under the statute providing for the taxation of motor carriers no protest was provided by the statute and the payments would be placed in the state treasury to the credit of the annual school fund.) Plaintiffs further suggest that regardless of numerous actions which were pending in the district court under G. S. 1949, 60-1121 under the contention of the commission the moneys paid under protest would have gone beyond their reach if they had not sought extraordinary relief in the way of mandamus. The statute simply states that an aggrieved taxpayer may obtain equitable relief by way of injunction. It would not appear to bar other relief in the way of mandamus if, under a given state of facts, mandamus were the only remaining available remedy. Plaintiffs, under the circumstances in the instant case, sought such remedy.

This court held in the case of *Kittredge v. Boyd,* 136 Kan. 691, 692-694, 18 P. 2d 563, 93 A. L. R. 574, that:

"Mandamus when timely begun, to require the return of the money illegally exacted and paid to the state treasurer under protest, is a proper remedy."

". . . In this jurisdiction where the desideratum of the litigation is merely to obtain an authoritative determination of some purely legal question for the guidance of public officers mandamus has become the familiar vehicle to accomplish that objective."

It must be understood, however, that the writ of mandamus is a discretionary one and does not issue as a matter of right. (*State, ex rel., v. Salome,* 169 Kan. 585, 220 P. 2d 192; *In re Insurance Tax Cases,* 160 Kan. 300, 161 P. 2d 726; *City of Ellsworth v. Wilson,* 149 Kan. 486, 87 P. 2d 611.)

This court should not encourage the filing of original proceedings before it. Unless an extraordinary situation exists, the matter should first be presented to the trial court, where the facilities are set up for the taking of evidence, the disposition of interim orders, and the preparation of an abstract of the proceedings for the consideration of this court on appeal. Notwithstanding the fact it may be conceded there is merit to the contentions now made by defendants to the effect that mandamus does not lie in this case because plaintiffs had an adequate remedy at law, nevertheless, in view of the fact that this court issued two alternative writs of mandamus unobjected to by defendants, no motion to quash being filed against either of them, and for the further reason the action involves a question of state-wide public interest, *i. e.,* the constitutionality of a

taxing act of this state, and the parties have been to a great amount of expense in the litigation involved herein, we are of the opinion that we would hardly be justified in disposing of the matter on such technical grounds and therefore feel obligated to consider the case on its merits on the constitutional question involved.

The commission also contends that plaintiffs had an adequate remedy at law by way of administrative proceedings under G. S. 1949, 79-1702, which provides in part as follows:

"If any taxpayer shall have a grievance not remediable or which has not been remedied under section 1 [79-1701] of this act such grievance may be presented to the state commission of revenue and taxation at any time prior to the first day of August of the year succeeding the year when the assessment was made and the taxes charged which are the basis of the grievance, and the said commission shall have full authority to inquire into the grounds of complaint, and if it shall be satisfied from competent evidence produced that there is a real grievance, it may direct that the same be remedied either by canceling the tax if uncollected together with all penalties charged thereon, or if the tax has been paid, by ordering a refund of the amount found to have been unlawfully charged and collected. . . ."

Insofar as the plaintiffs complain of the commission's valuation of their property and other acts of the commission in its application of the statute, the commission's position is well taken. The commission should not be subjected to litigation in the courts until the alleged error has been called to its attention and it has had an opportunity to consider and correct the grievance. (*Gray v. Jenkins,* 183 Kan. 251, 326 P. 2d 319.)

However, a different situation exists where the tax statute under which the commission is operating is challenged as unconstitutional. G. S. 1949, 79-1702 was not intended to cover a situation where the constitutionality of a tax statute is challenged. The commission is not set up as a court to review the constitutionality of legislative enactments. It is an administrative body. It is the commission's duty to presume that the statutes are constitutional and valid. The plaintiffs had a right to seek court relief on the question of the constitutionality of the statute without first presenting the question to the commission for review.

The plaintiffs contend that G. S. 1955 Supp., 79-6a04 is in itself inconsistent and contains conflicting provisions. Plaintiffs argue that the statute did not give them the right to pay one half of the tax on or before December 20 and the balance on or before June 20 and denied them the right which all other "general tax-

payers" had. The last two paragraphs of G. S. 1955 Supp., 79-6a04 provide as follows:

"The state commission of revenue and taxation shall cause to be sent to each motor carrier on or before the first day of July a statement of the amount of the valuation or assessment, the rate of levy and the amount of the tax, which tax shall be paid by the motor carrier to the commission within the time required for the payment of general taxes. All taxes collected under the provisions of this act shall be paid into the state treasury by the commission for the use of the annual school fund of the state.

"In the event that any tax levied under the provisions of this act shall not have been paid on or before the twentieth day of December of the year in which said tax is levied, a penalty of ten percent (10%) shall be added to the total of the tax by the commission."

The first paragraph quoted above provides that the tax shall be paid by the motor carriers to the commission within the time required for the payment of general taxes. The second paragraph above quoted is dealing with penalties. It is clear the legislature intended that the motor carriers pay one half of their tax on or before December 20 and the balance on or before June 20, "within the time required for the payment of general taxes."

If possible, the court will construe a statute to prevent discrimination and unequal protection of the laws. This court will always approach questions challenging the constitutionality of a statute with a disposition to determine them in such a manner as to sustain the validity of the enactment in question. (*Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53.) The construction supporting a statute is preferred to one destroying it. (*Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 2d 936.) Where possible, the provisions of an act must be considered together to resolve consistency rather than inconsistency, and a construction upholding the provision of the statute is favored. (*Terrill v. Hoyt,* 149 Kan. 51, 87 P. 2d 238.) As we consider and construe together the last two paragraphs of 79-6a04, we find no discrimination or violation of the due process of law.

The commission's notice did inform the motor carriers that all of their taxes had to be paid on or before December 20. The commission's notice was in error. However, no one was harmed by such error. Insofar as this case is concerned, all taxes were paid under protest before December 20. None of the plaintiffs attempted to take advantage of the fact that they could pay part of their taxes on December 20 and the balance on or before June 20. The error was not called to the commission's attention.

The plaintiffs contend that the irrevocable fixing of tax liability without the opportunity for a hearing was a denial of due process and in violation of the fourteenth amendment of the Constitution of the United States. We must review the statutes and the evidence to determine what notice and what opportunity to be heard were given.

G. S. 1955 Supp., 79-6a02 provides in part:

"On or before the twentieth day of March in each year every motor carrier owning or operating any over-the-road motor vehicles or rolling equipment shall . . . return to the state commission of revenue and taxation, upon forms furnished by said commission, a sworn statement or schedule as follows: . . ." [The various information to be furnished is set out in the balance of the section.]

The third paragraph of G. S. 1955 Supp., 79-6a04 provides in part:

"The state commission of revenue and taxation shall cause to be sent to each motor carrier on or before the first day of July a statement of the amount of the valuation or assessment, the rate of levy and the amount of the tax, which tax shall be paid by the motor carrier to the commission within the time required for the payment of general taxes. . . ."

In conformity with the statute, the commission mailed to the taxed motor carriers a notice providing in part:

"The State Commission of Revenue and Taxation has valued the property of your company for assessment purposes as follows:

3.1 Kansas portion of over-the-road motor vehicles and rolling equipment ........................................$_____

3.2 Franchise rights evidenced by certificate of convenience and necessity secured from the Corporation Commission of the State of Kansas ........................................ _____

3.3 Privileges evidenced by interstate licenses secured from the Corporation Commission of the State of Kansas ............... _____

3.4 Total Motor Carrier value in Kansas (G. S. 1955 Supp., 79-6a01—6a09) ...................................$_____

3.5 Penalty: 'Add fifty per cent (50%) additional value as a penalty for failure to file a report' on or before March 20th...$_____

3.6 Total value in Kansas plus penalty value .................$_____

Computation of Kansas motor carrier tax:

$_____     $_____            $_____ "
(Average rate        (Kansas motor                 (Tax due)
of levy)             carrier value)

The commission issued an additional notice to those motor carriers who had not paid their tax prior to October 15, again informing them of the valuation, the rate of levy, the amount of the tax and the date when final payment was due, informing such motor carriers that it was a friendly reminder.

There would appear to be no question as to the sufficiency of the notice. The plaintiffs received notice on July 1 as to their valuation, the rate of levy and the amount of tax due. The tax was not due until December 20. The plaintiffs had ample time in which to seek relief before any judgment was rendered against them.

The plaintiffs could have sought relief under G. S. 1949, 79-1702 insofar as they were objecting to the commission's interpretation of the statute and the commission's valuation made under it. No doubt the plaintiffs could have obtained relief under G. S. 1949, 60-1121 for the same reasons stated above. The fact that the plaintiffs contend they can maintain this action in mandamus would indicate they had an opportunity to be heard before their liability for tax went to final judgment.

It is not necessary that all the rights to be heard be set out under a specific tax statute. The right to relief and the right to be heard could be considered in connection with the general tax statute.

In *Clark v. Murray,* 141 Kan. 533, Syl. ¶ 2, 41 P. 2d 1042, the rule is stated:

"Although statutes may be not strictly *in pari materia,* in the construction and interpretation of those relating to the same subject matter or having the same general purpose, reference may be made to them to determine the intent of the legislature as to such subject matter or purpose."

This rule was again given effect in *Kimminau v. Common School District,* 170 Kan. 124, 127, 128, 223 P. 2d 689:

"Whatever has been said in previous cases involving the budget or cash-basis law must be considered in the light of subsequent legislation. It will not be presumed the legislature intended to leave contradictory enactments on the statute books. (*Clark v. Murray,* 141 Kan. 533, 537, 41 P. 2d 1042.) The question now is what was the legislative intent as reflected by subsequent or supplemental legislation? This requires consideration of statutes *in pari materia* in order to bring them into workable harmony if reasonably possible to do so. (*Rausch v. Hill,* 164 Kan. 505, 190 P. 2d 357; *State, ex rel., v. Board of Regents,* 167 Kan. 587, 593, 207 P. 2d 373.) Even if statutes may be not strictly *in pari materia* in the construction and interpretation of those relating to the same subject matter or having the same general purpose, reference may be made to them in order to determine the intent of the legislature as to such subject matter or purpose. (*Clark v. Murray,* supra.)"

It is only necessary that at some stage of the assessment proceedings the taxpayer shall have an opportunity, after notice, to appear and contest the assessment.

In *Gallup v. Schmidt,* 183 U. S. 300, 307, 22 S. Ct. 162, 46 L. ed. 207, the supreme court of the United States stated:

"It has frequently been held by this court, when asked to review tax proceedings in state courts, that due process of law is afforded litigants if they have an opportunity to question the validity or the amount of an assessment or charge before the amount is determined, or at any subsequent proceedings to enforce its collection, or at any time before final judgment is entered. *Walker v. Sauvinet,* 92 U. S. 90; *Davidson v. New Orleans,* 96 U. S. 97; *Spencer v. Merchant,* 125 U. S. 345; *Allen v. Georgia,* 166 U. S. 138; *Orr v. Gilman,* ante, 278."

This court has passed on the same question.

In *Balch v. Glenn,* 85 Kan. 735, 751, 119 Pac. 67, we said:

"Where ample notice is provided which gives to the property owner an opportunity to have a hearing in any court of competent jurisdiction before his property is affected he is afforded due process of law."

In the case of *City of Holton v. Kansas State Bank,* 144 Kan. 352, 357, 59 P. 2d 41, this court said concerning the necessity of notice:

"As to the necessity of a notice, that question has long been settled to the contrary in this state. It was said in *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835, that:

" 'It has already been determined that a statute is not invalid merely by reason of the fact that it does not expressly provide for notice and hearing. It may be implied by the courts unless the language of the statute excludes the theory that notice and hearing are necessary.' (p. 28.)"

The plaintiffs challenged the validity of the motor carrier tax act based on the last sentence of G. S. 1955 Supp., 79-6a03, which provides:

"The commission shall also make a separate valuation and assessment of the franchise rights and privileges evidenced by the certificate of convenience and necessity or an interstate license secured from the corporation commission of the state of Kansas."

They contend that the taxing of an interstate license as secured from the state corporation commission of the state of Kansas places a burden upon interstate commerce in violation of Article I, section 8, clause 3 of the Constitution of the United States, in that the validity of a tax imposed upon interstate commerce is dependent upon its being a compensation for the use of public highways or for some form of police regulation. We are required to review facts and statutes.

G. S. 1955 Supp., 79-6a03 provides:

"The commission of revenue and taxation shall value and assess all over-the-

road motor vehicles and rolling equipment owned, used or operated by every motor carrier in the state of Kansas in an amount determined in the following manner and according to the following method: (1) The ratio which the total number of miles operated within the state of Kansas bears to the total number of miles operated everywhere shall be determined; (2) the value of all over-the-road motor vehicles and rolling equipment owned, used or operated by said motor carrier shall be reduced by the ratio so determined; (3) the amount so determined shall be the value and assessment of all over-the-road motor vehicles and rolling equipment owned, used or operated by said motor carrier in the state of Kansas. The commission shall also make a separate valuation and assessment of the franchise rights and privileges evidenced by the certificate of convenience and necessity or an interstate license secured from the corporation commission of the state of Kansas."

This section of the statute directs the commission to value and assess all over-the-road motor vehicles and rolling equipment owned, used or operated by every motor carrier in the state of Kansas, and informs the commission how the value and assessment shall be made. The last sentence of the section instructs the commission to "also make a separate valuation and assessment of the franchise rights and privileges evidenced by the certificate of convenience and necessity or an interstate license secured from the corporation commission of the state of Kansas." It is evident that the statute instructs the commission to place a tax on certificates of convenience and necessity and interstate licenses issued by the state corporation commission and held by interstate carriers.

The commission made a computation of the privileged value, which was computed in the same manner for intrastate certificates of convenience and necessity as for interstate licenses, and was accomplished as follows:

(1) The average unit value was computed by dividing the total value of all over-the-road motor vehicles and rolling equipment by the number of power units.

(2) The number of miles traveled in Kansas was divided by 1,000 and multiplied by the average unit value divided by 1,000.

(3) The resultant figure was the total privilege value assessed against the carrier.

(4) If a carrier held one or more interstate licenses or one or more intrastate certificates, or some combination of these licenses and certificates, the privilege value was assigned to each of these licenses or certificates in equal parts. The total privilege value remained the same.

The tax is just what the legislature said it was—a tax on the interstate license granting a privilege to do business in Kansas. The tax was not levied for the use of the highways or for police

protection. This issue presents a question separate from that of an ad valorem tax based on over-the-road vehicles and rolling equipment. Each plaintiff has paid its fee for the license application. Each has paid its registration fee annually on every piece of registered equipment.

The legislature has the right to place an ad valorem tax on motor vehicles or equipment used in the state. We find no constitutional objections to the ad valorem tax. It also has the right to levy a tax for the use of the state highways or for police protection and regulations. It cannot however tax as a privilege the license of an interstate carrier unless such tax is for the use of the highways or for some form of police protection.

The money paid as the privilege tax was to be placed in the annual school fund. The school fund has no relation to the use of the highways or police protection.

Insofar as G. S. 1955 Supp., 79-6a03 attempts to place a tax on the privilege of interstate carriers to do business within the state of Kansas, the specific provision is unconstitutional and void. In the recent case of *Spector Motor Service v. O'Connor*, 340 U. S. 602, 603-609, 71 S. Ct. 508, 95 L. ed. 573, the supreme court of the United States covered the question before us in the following language:

"This proceeding attacks, under the Commerce Clause of the Constitution of the United States, the validity of a state tax imposed upon the franchise of a foreign corporation for the privilege of doing business within the State when (1) the business consists solely of interstate commerce, and (2) the tax is computed at a nondiscriminatory rate on that part of the corporation's net income which is reasonably attributable to its business activities within the State. For the reasons hereinafter stated, we hold this application of the tax invalid."

. . . . . . . . . . . . . .

"The tax does not discriminate between interstate and intrastate commerce. Neither the amount of the tax nor its computation need be considered by us in view of our disposition of the case. The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways or collected in lieu of an ad valorem property tax."

. . . . . . . . . . . . . .

"The answer in the instant case has been made clear by the courts of Connecticut. It is not a matter of labels. The incidence of the tax provides the answer. The courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The

State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory.

"This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state."

The plaintiffs contend that no part of G. S. 1955 Supp., 79-6a01 to 79-6a09 can be separated from the balance of the act and, therefore, the 1955 enactment must fall and the sections attempted to be repealed by the 1955 act remain in full force and effect. The commission contends that any part of the act may be severed, even to the extent of deleting the phrase "or an interstate license" as set out in the last sentence of G. S. 1955 Supp., 79-6a03.

Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent. The phrase "or an interstate license" cannot be stricken from the sentence. To do so would amount to rewriting the sentence. This, the court cannot do. However, the court can strike the objectional sentence and let the remainder stand, if it appears that the legislature would have enacted the law without the objectional sentence had it known that the sentence was unconstitutional.

What the legislature attempted to do when it enacted G. S. 1955 Supp., 79-6a01 *et seq.* is apparent. Sections 79-6a01 to 79-6a05 provided only for the taxing of motor vehicles which transported persons or property and which had secured certificates of convenience and necessity from the corporation commission of the state of Kansas. Before the 1955 revision the statute provided that the commission value and assess all rolling equipment, rights and privileges belonging to every motor carrier referred to in the

act, and that it was the duty of the commission to make a separate valuation and assessment of the franchise right evidenced by the certificate of convenience and necessity secured from the state corporation commission (G. S. 1949, 79-6a03). The tax was applied only to intrastate carriers. The motor carrier tax act (G. S. 1955 Supp., 79-6a01 to 79-6a09) attempted to and did bring under the tax the over-the-road motor vehicles and rolling equipment of motor carriers operating both in intrastate and interstate commerce.

It is clear that the legislature intended to place a tax on the over-the-road motor vehicles and rolling equipment of motor carriers operating in interstate and intrastate commerce. The legislature would not have permitted the interstate motor carriers to escape such tax simply for the purpose of taxing the franchise right of intrastate carriers holding a certificate of convenience and necessity. Had the legislature known that the objectionable sentence was unconstitutional, it would have no doubt eliminated such sentence.

Striking the objectionable sentence does no violence to the balance of the act. The remainder of the act continues to express the legislative intent insofar as its constitutionality is concerned. The constitutional part can stand alone as a complete expression of the intention of the legislature.

This court said in *Voran v. Wright*, 129 Kan. 601, 616, 284 Pac. 807 (quoting 6 R. C. L. 121):

" 'It is a fundamental principal that a statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected.'

"This court, in the case of *State, ex rel., v. Hilty*, 97 Kan. 91, 154 Pac. 214, has sanctioned and approved such a course in separating and excluding the objectionable and invalid parts or portions of an act and retaining the balance as constitutional.

" 'This invalid provision is not such an integral portion of the whole law as to be inseparable; . . . and this does not violate the legislative intent or impair the efficacy of the law.' (*Harrod v. Latham*, 77 Kan. 466, syl. ¶ 3, 95 Pac. 11. See, also, *Hardy v. Kingman County*, 65 Kan. 111, 68 Pac. 1078; *State, ex rel., v. Howat*, 107 Kan. 423, 191 Pac. 585; *State v. Howat et al.*, 116 Kan. 412, 227 Pac. 752.)" [See also *State, ex rel., v. Stonehouse Drainage Dist.*, 152 Kan. 188, 102 P. 2d 1017.]

The commission contends that the taxes paid by the two named plaintiffs and the 220 motor carriers listed in plaintiffs' Exhibit C and protested by them have been paid into the annual school fund

and cannot now be reached by the plaintiffs. This court issued its order directing that the taxes paid under protest be transmitted to the state treasurer for impounding in a trust fund account or a special account as protested taxes.

This court having taken jurisdiction of the controversy had the right to keep the entire matter in *status quo* until such time as the legal rights of the parties were determined. Having made such an order, the taxes paid and protested by the two named plaintiffs and the 220 plaintiffs similarly situated are available for return to them in accordance with the determination of the issues in this case.

The last sentence of the motor carrier tax statute, G. S. 1955 Supp., 79-6a03, being unconstitutional and void, the two named plaintiffs and the 220 motor carriers listed in plaintiffs' Exhibit C should have returned to them by the proper taxing authorities the amount charged and paid by them as a tax on the "valuation and assessment of the franchise rights and privileges evidenced by the certificate of convenience and necessity or an interstate license secured from the corporation commission of the state of Kansas" for the years 1956 and 1957.

In view of what has been said the writ is allowed in part and denied in part. The costs will be equally divided between plaintiffs and defendants.

It is so ordered.

SCHROEDER, J., dissents.