By the Court.
 

 The sole question presented is whether a majority vote or a two-thirds vote of council is required for passage of the resolution of cooperation with the federal Government under the plan submitted to and disapproved by the planning commission. If the commission had no power to act, then a majority vote of council was sufficient.
 

 Cincinanti is a charter city and the authority for the planning commission is found in Sections 2, 3 and 5 of Article VII. Section 5 reads as follows:
 

 “Whenever the commission shall have made a plan of the city or any portion thereof, no public building, street, boulevard, parkway, park, playground, canal, river front, harbor, dock, wharf, bridge, viaduct, tunnel and publicly or privately owned public utility, or part thereof, shall be constructed or authorized to be constructed in the city or said planned portion of the city until and unless the location thereof shall be approved by the commission; nor shall any street, avenue, parkway, boulevard or alley be opened for any purposes whatsoever without the approval of the commission; provided that, in case of its failure to approve, the commission shall communicate its reason for failure to approve to the council, and the council, by a vote of not less' than two-thirds of its members shall have the power to overrule such failure to approve, and thereupon the council or the proper board, officer or person, as the case may be, shall have power to act without such approval. The widening, narrowing, relocation, vacation, or change in the use of streets
 
 *583
 
 and other public ways, grounds and places, except change of grade, shall be subject to similar approval, and failure to approve may be similarly overruled by the council.”
 

 The official plan of Cincinnati, adopted in 1925 by the planning commission, shows that all the streets in the suburb of California appearing thereon are duly dedicated and accepted streets. That the plans for the flood wall project require the narrowing and vacating of some of these streets appears from the following quotation from the agreed statement of facts.
 

 “The plans' of the U. S. engineer show that Panama street will be narrowed at the intersection of Panama street and Reservoir avenue, and that portions of Panama, Rohde, Eldorado and Waits streets must be vacated to construct the proposed dyke; further that the proposed dyke will in general parallel the riverbank in a north and south direction from Reservoir avenue, along the west side of Panama street, to a point south of Waits street cutting off the westerly extremities of Rohde, Eldorado and Waits streets. Eldorado avenue is the only street that has ever been used from Panama to the riverbank.
 
 *
 
 * *”
 

 The building of the flood wall along the waterworks plant will also require the relocation of the city-owned railway, which serves this plant, and the U. S. engineer’s plans provide for such relocation.
 

 It is claimed that the words' “river front” as used in Section 5 of Article VII of the Charter do not include “flood walls.” We are of the opinion that the words “river front” include a flood wall to be constructed upon and along the water front. In fact when such a flood wall is constructed it becomes an integral part of the river front.
 

 It thus appears that the project will require the narrowing .and vacating of streets, a change in location of the city-owned railway, and the location of a river
 
 *584
 
 front construction. The plan for such changes and construction comes within Section 5, Article VII of the Charter, which must he complied with unless necessity therefor is obviated because the flood wall sought to be constructed is a federal project wholly under'the jurisdiction of the federal authorities.
 

 The relator contends that the city planning commission was without power to disapprove the resolution because the flood control wall is a federal project.
 

 Relator’s counsel argues' that the protection of navigable streams from destruction by floods is purely within the scope of federal legislation; that federal action preempts the field and that the local police power may not conflict with the general laws of the state and can not conflict with, obstruct or hamper the sovereign power of the United States. The relator grounds his contention in part at least upon the principle pronounced in
 
 State, ex rel. Ellis, City Solicitor,
 
 v.
 
 Blake
 
 more,
 
 Clerk,
 
 116 Ohio St., 650, 157 N. E., 330. That case involved the construction of a bridge under authority of the county commissioners. The bridge was located wholly within the city limits but the city bore no part of the expense. It was held the city planning commission had no power to act in the matter. On these grounds that case is distinguishable from the instant case.
 

 Title 33, Section 701c, U. S. Code, contains the following provision: “* * * no money appropriated under authority of Section 7, of the Act of June 22, 1936, c. 688, 49 Stat., 1596, shall be expended on the construction of any project until states, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of "War that they will (a) provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, except as' otherwise provided herein; (b) hold and save the
 
 *585
 
 United States free from damages 'due to the construction work; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of War * *
 

 In November, 1937, the electors of-the city of Cincinnati approved a bond issue of $5,000,000 for flood control. The total estimated cost of the California flood wall is $870,700, of which amount the federal Government will pay $657,000 and the city of Cincinnati $150,000. In addition, the residents of California have indicated by petition their willingness to assume an assessment of the balance of the cost amounting to $63,700.
 

 It appears on the face of the matter that the project deeply concerns the municipality because it must bear a large part of the expense and because changes in its streets, its waterworks railway and its river front are involved; moreover under Section 701c of the Federal Control Act, the federal Government may not spend the money unless the local agencies give assurance to the Secretary of War that they will comply with specified requirements. It follows that the project can not proceed to construction and fulfillment without the assent and support of the city of Cincinnati, and the city authorities, in approving the project and the plan therefor, must comply with the provisions of the city charter. The city planning commission, therefore, had power to act, unless the charter provision under which it attempted to act is unconstitutional.
 

 Is Section 5, Article VII, unconstitutional on the ground that it delegates legislative power to the planning commission?
 

 A city is empowered under the Constitution of Ohio to frame and adopt a charter for its government and a charter city may exercise all powers of local self government with the exception that local police, sanitary and other'similar regulations must not be in eon
 
 *586
 
 flict with general law of the state. (Sections 3 and 7, Article XVIII of the Constitution.)
 

 Cincinnati is a charter city and as such derives its power direct from the state Constitution. In adopting a charter a municipality may make any one or more of its hoards' the repository of legislative power. The charter does confer general legislative power upon the council hut at the same time confers certain power and authority upon the planning commission. It is difficult to see upon what theory there was an unconstitutional delegation of legislative power to the planning commission. The commission’s report shows that what that body disapproved was not only the resolution but also the plan submitted therewith. It was within the power of the municipality to adopt Section 5, Article VII of the charter, and the provisions thereof are not invalid.
 

 Plainly the adoption of the resolution would amount to giving assurance to the federal Government which if satisfactory to the Secretary of War would result in the project going forward in accordance with the plan of the U. S. engineer. The passage of the resolution would therefore amount to the approval of such plan, and, as has been pointed out, approval of the plan could not be had under the municipal charter unless there was compliance with Section 5, Article VTI.
 

 Since a two-thirds vote of the council was necessary to a disapproval of the action of the planning commission, the relator is' not entitled to the writ of mandamus.
 

 Writ denied.
 

 Weygandt, O. J., Day, Zimmerman, Williams, Myers, Matthias and Hart, JJ., concur.