No. 34,939

THE LYMAN FLOOD PREVENTION ASSOCIATION, by I. E. Lewis, as President, and I. E. LEWIS, *Appellants*, v. THE CITY OF TOPEKA, JOHN F. SCOTT, as Mayor, M. P. JONES, WILLIAM A. LAWSON, HARRY C. SNYDER, and LLOYD B. SMITH, as City Commissioners, FRED KNAPP, as City Clerk, and HARRY H. WOODRING, as Secretary of War of the United States, *Appellees*.

(106 P. 2d 117)

Opinion filed October 5, 1940.

*Edward Rooney* and *Jacob A. Dickinson,* both of Topeka, for the appellants.

*Mark L. Bennett,* city attorney, *Harold E. Doherty,* assistant city attorney, *Summerfield S. Alexander,* United States attorney, and *Lester Luther,* assistant attorney, for appellee Harry H. Woodring.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to enjoin the defendants, including the Secretary of War of the United States, from constructing a levee or "ring dike" as a protection from floods for that part of Topeka which lies on the north or left bank of the Kansas river, commonly called North Topeka.

It appears that along and near the Kansas river, a navigable stream, the federal government proposes to expend a large sum of money to construct such a project, and that the city of Topeka and other local authorities concerned therewith have attended to certain preliminaries incident thereto. The federal government and the state highway commission have also set about the construction of a new route for federal highway No. 40 by routing it almost due east

at some short distance from North Topeka. Soldier creek is a stream which flows from northwest to southeast, skirting North Topeka and entering the Kansas river about the east side thereof. A free-hand sketch appended hereto will serve to visualize the situation and the project in question:

Sketch by
C C WINTER

The plaintiff Lewis and others associated with him in this litigation are owners of properties lying immediately north of the proposed ring dike and south of the new route of federal highway No. 40, the grade of which is measurably above the general level of the ground thereabout.

Within historic time both the Kansas river and Soldier creek, its tributary, have occasionally overflowed their banks and have caused destructive floods, devastating all of Topeka north of the river and the outlying vicinity where plaintiffs' properties are situated. More frequently other floods of less magnitude have inundated North Topeka and the surrounding community. (See "High Waters in Kan-

sas," 8 Kan. Hist. Collections, 472; Governor Bailey's Message to the Legislature in House and Senate Journals, Special Session 1903; *Drainage District v. Railway Co.*, 99 Kan. 188, 191, 161 Pac. 937.)

To lessen or terminate such flood hazards, the federal government proposes to construct a ring dike around North Topeka, requiring only from the local authorities the acquisition of the necessary land and borrow pits for the projected improvement, and some authoritative assurance that it will be immune from any and all claims for damages, direct or consequential.

The federal statute under which this project is to be undertaken is the act of congress of June 22, 1936, ch. 688, §§ 1-3, 49 U. S. Stat. 1570, and later amendments, 33 U. S. C. A. § 701a *et seq.* Section 701a, in part, reads:

"It is hereby recognized that destructive floods upon the rivers of the United States, upsetting orderly processes and causing loss of life and property, including the erosion of lands, and impairing and obstructing navigation, highways, railroads, and other channels of commerce between the states, constitute a menace to national welfare; that it is the sense of congress that flood control on navigable waters or their tributaries is a proper activity of the federal government in coöperation with states, their political subdivisions, and localities thereof."

Section 701b, in part, reads:

"Hereafter, federal investigations and improvements of rivers and other waterways for flood control and allied purposes shall be under the jurisdiction of and shall be prosecuted by the War Department under the direction of the Secretary of War and supervision of the Chief of Engineers."

Section 701c, in part, reads:

"After June 22, 1936, no money appropriated under authority of section 7 of the act of June 22, 1936, c. 688, 49 Stat. 1596, shall be expended on the construction of any project until states, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of War that they will (a) provide without cost to the United States all lands, easements, and rights of way necessary for the construction of the project, except as otherwise provided herein; (b) hold and save the United States free from damages due to the construction works; . . ."

The state statutes under which the city of Topeka and the other local authorities have proceeded to acquire the requisite land and borrow pits for the construction of the proposed ring dike are G. S. 1939 Supp. 12-635, and some general provisions of G. S. 1935, chapters 24 and 26, whose pertinency and scope are not questioned.

Attached to plaintiffs' petition as exhibits are a copy of a Topeka

city ordinance, No. 6817, adopted September 14, 1937, which, in part, reads:

"WHEREAS, The federal flood control act of 1936 authorized, in section 5, a flood-control project for Topeka; and

"WHEREAS, Section 3 of the said act provided that all right of way be provided and the cost of all damages be borne by the local subdivisions; and

"WHEREAS, The board of city commissioners, by resolution on October 13, 1936, became sponsors for the said project and pledged the federal government the right of way and cost of damages pertaining thereto provided the federal government constructed said flood-control project; and

"WHEREAS, The United States Department of War notified the city on August 13, 1937, that $600,000 regular funds and $400,000 emergency relief appropriation funds had been alloted for said project; and

"WHEREAS, The state of Kansas, the city of Topeka, the North Topeka Drainage Board and the Levee-Drainage District Number Six own land over which the proposed levees will run and with Shawnee county are all benefited by the said proposed project: now, therefore,

*Be it ordained by the board of commissioners of the city of Topeka:*

"SECTION 1. That the state of Kansas, the city of Topeka, the North Topeka Drainage District and the Levee-Drainage District Number Six allow the use of such land as may be required by the War Department on which to locate the levees and other flood-protection works of the said project.

"SEC. 2. That the city of Topeka assumes and agrees to pay eighty percent (80%) and Shawnee county assumes and agrees to pay twenty percent (20%) of the cost of all additional right of way and all damages pertaining thereto. The total cost in no case to exceed ninety-five thousand, five hundred dollars ($95,500)."

Another exhibit attached to the petition shows that on September 27, 1937, the board of county commissioners approved the conditions set forth in city ordinance No. 6817, and agreed "to comply with all the conditions and accept the provisions thereof, providing the proportion of the cost thereof to be assumed and paid by Shawnee county, Kansas, does not exceed the sum of $19,100."

The three members of the board of county commissioners, acting as the ex officio board of "Levee Drainage District No. 6" (whose relationship to the project is not stated in the pleadings), on September 27, 1937, likewise gave its sanction and approval to the conditions and terms under which it was to be constructed, which apparently bound it no further than to donate "the right of way now held by said drainage district."

On September 28, 1937, the "North Topeka Drainage District" (whose relationship to the project is not alleged) likewise gave its sanction and approval to the project—

"Provided, that in the construction of said ordinance and this acceptance, that the said ordinance and this acceptance be so construed that the North Topeka Drainage District and the board of directors of the North Topeka Drainage District shall not be called upon or required to furnish any land that may be required by the War Department on which to locate the levees or other flood-protection works on said project, other than land now owned by The North Topeka Drainage District and that The North Topeka Drainage District and the board of directors of said district shall not be required to pay any of the expense in connection with said project."

The plaintiffs' main complaint against this project for the protection of North Topeka against floods is that heretofore when the Kansas river and its tributary, Soldier creek, or either of them, overflowed their normal channels, their floodwaters have flowed across North Topeka, but that this proposed ring dike will divert such floodwaters to the lands of plaintiffs which are situated between the north side of the proposed dike and the elevated grade of the new route of highway No. 40 and will cause the locality of plaintiffs' lands to constitute—

"A bypass, diversion channel, floodway or spillway for floodwaters which would greatly increase the flood hazard to which said lands are now subjected, and will subject said lands to the danger of partial or total destruction by floodwaters."

This alleged grievance is stated at length in plaintiffs' petition. And it is also alleged that the properties of plaintiff and his associates in this litigation are of the value of $2,000,000 or more, that their location between the elevated grade of the new federal highway No. 40 and the proposed ring dike will result in diverting floodwaters from the North Topeka area to and upon the lands of plaintiffs and will cause them irreparable injury and damage, and that no provision has been made to compensate plaintiffs therefor, and that in consequence there will be in effect an actual taking of their land for a public purpose without compensation in violation of the guaranties of the federal and state constitutions.

The defendants impleaded are the Secretary of War, and the city of Topeka and its principal officials. The prayer of plaintiffs' petition is for a perpetual injunction against the construction of the ring dike—

"Unless and until just and adequate compensation be provided for or made to the plaintiffs and all other persons similarly situated for the taking and use of their lands and properties and the damages thereto arising out of said project," etc.

Service of summons on the city and its officials was regularly effected. On defendant Harry H. Woodring, as Secretary of War of the United States, service was made as follows: It chanced that shortly after this action was filed, Secretary Woodring came from Washington, D. C., to Topeka, to attend a gathering of his political associates and to make a political speech. During his presence in Topeka on that occasion the sheriff served him with summons—with whatever legal potency might attach thereto. On special appearance and motion of his counsel, that service of summons on the Secretary of War was quashed. Defendants' general demurrer to plaintiffs' petition was sustained. Hence this appeal, assigning error on both rulings.

On the threshold of consideration of so much of this appeal as pertains to the sustaining of the motion to quash the service of summons on Harry H. Woodring as Secretary of War, we must take judicial cognizance of the fact that pending this appeal Woodring has retired from the office of Secretary of War. Does not that fact abate this appeal as to him? While there is considerable diversity of authority on this question (Anno.—Mandamus—Change of Officers—Effect, 102 A. L. R. 943 *et seq.*), insofar as officials of the federal government are concerned the rule is that the appeal does abate. (*The Secretary v. McGarrahan,* 76 U. S. [9 Wall] 298; 19 L. Ed. 579; *United States v. Boutwell,* 84 U. S. [17 Wall] 604; 21 L. Ed. 721; *Warner Valley Stock Co. v. Smith,* 165 U. S. 28; 41 L. Ed. 621; *United States, ex rel. Bernardin, v. Butterworth,* 169 U. S. 600; 42 L. Ed. 873.)

In *United States v. Boutwell,* supra, the action was to compel Boutwell, secretary of the treasury, to pay an order on the United States treasury whose validity was conceded. The lower court refused mandamus and after it was brought to the supreme court on error Boutwell resigned his place and one Richardson was appointed in his stead. The claimant's motion to substitute Richardson as defendant in place of Boutwell was denied. The court ruled that in the absence of some statutory provision to the contrary, an action against an officer of the federal government abates on his retirement from office.

*Warner Valley Stock Co. v. Smith,* supra, was a suit to enjoin Hoke Smith as Secretary of the Interior and other associated federal officials and their subordinates from exercising jurisdiction over certain swamp lands in Oregon in alleged trespass of the rights

of complainant. A demurrer to the bill of complaint was sustained, and the case found its way to the United States supreme court on appeal. Pending that appeal Hoke Smith resigned the office of Secretary of the Interior. The supreme court held that by such resignation the action abated, citing *United States v. Boutwell,* supra.

Because of these decisions, however, a federal statute (act of congress of February 8, 1899, ch. 121, 30 U. S. Stat. 822; Feb. 13, 1925, ch. 229, § 11, 43 U. S. Stat. 941) has been enacted which provides that where a federal officer who is a party to a lawsuit dies, resigns or otherwise ceases to hold office, the court where the action is pending, whether it be one of first instance or an appellate tribunal, may permit the cause to be continued or maintained by or against his successor in office—

"If within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved.

. . . . . . . . . . . . . . .

"(c) Before a substitution under this section is made, the party or officer to be affected, unless expressly consenting thereto, must be given reasonable notice of the application therefor and accorded an opportunity to present any objection which he may have." (28 U. S. C. A., § 780.)

Passing the point just mentioned, it would seem that on logical grounds the motion to quash the service of summons on Woodring as Secretary of War by the sheriff of Shawnee county was correct. That officer had no private interest in the proposed project. His concern therewith was wholly official. As secretary of war his office is in Washington (5 U. S. C. A. 181). Whenever it is proper to sue him he must be served with summons at the seat of government. He is not amenable to service of process here, there, or anywhere throughout the United States or its insular possessions, wherever he may happen to be on public or private business and where a process server might manage to reach him. Counsel for appellants cite the early case of *Wilcox v. Jackson,* 38 U. S. (13 Pet.) 498, where a claimant to part of the land occupied by Fort Dearborn and a lighthouse erected by the federal government brought an action in ejectment in the circuit court of Cook county, Illinois, against the United States army commander in charge of the military post. The case is interesting from a historical standpoint, but no question of the sufficiency of the service of process on

the military commander was raised, and the case has no value as a precedent on that point. Another interesting case cited by counsel for appellants is *United States v. Lee,* 106 U. S. 196. It was an action in ejectment between private litigants and involved the homestead of General Robert E. Lee, now the site of the National Cemetery at Arlington, Va. That case was begun in the circuit court of Arlington county, Virginia, but was summarily removed to the federal court. The United States intervened in the case after judgment in the trial court. The case is not authority on the question whether the Secretary of War can be sued in a state court, or in any court on process served on him anywhere than at his office in Washington, D. C.

In *Kirk v. Good,* 13 F. Supp. 1020, the plaintiff brought a suit in equity against Good as Secretary of War and others for an injunction against the construction of some project of flood control under the same statute as that which purports to give the Secretary of War the authority to build the proposed ring dike around North Topeka. In an opinion denying the application for a temporary injunction and dismissing the bill, the court said:

"Officers of the United States are not subject to suit by a private party where no personal judgment is sought and such officers have no individual interest in the controversy, but where the United States is the only real party in interest, and against whom alone the relief sought is effective." (p. 1021.)

In *Nesbitt Fruit Products v. Wallace,* 17 F. Supp. 141, a suit for an injunction was brought in a federal court in Iowa against Wallace, secretary of agriculture, *et al.,* wherein some of his official doings were called in question. On defendant's behalf a motion to dismiss was sustained. The pertinent headnote to the case reads:

"Suit against Secretary of Agriculture involving acts done in his official capacity could not be maintained over his objections in district of his actual residence, but should have been brought in District of Columbia, where he had official residence (5 U. S. C. A., §§ 511, 512; Jud. Code, § 51, as amended, 28 U. S. C. A., § 112)."

The error assigned on the trial court's ruling on the Secretary of War's motion to quash the service of summons cannot be sustained.

Plaintiffs' petition alleged and defendants' demurrer admitted that in the preliminary arrangements for this flood-prevention project for North Topeka, the acquisition of land and borrow pits therefor, and procuring the assent of certain public authorities having some responsibility or discretion relating thereto, no regard has been paid to the statute which makes the sanction and approval of

the project by the chief engineer of the division of water resources of this state a prerequisite to its construction and makes it a penal offense to violate its provisions. (Laws 1929, ch. 203; G. S. 1935, 82a-301 *et seq.*) In *State, ex rel., v. Stonehouse Drainage Dist.*, 152 Kan. 188, 102 P. 2d 1017, it was held that for want of this officer's approval an alteration and improvement of the facilities for flood control in a local drainage district, the project was properly halted by injunction. In the opinion this court took cognizance of the state's growing interest in the subject of drainage and flood control as evidenced by the multiplying statutory enactments of the last thirty years, and the vesting of authority in certain state functionaries to be concerned therewith, particularly the chief engineer of the division of water resources, and the state corporation commission and its engineer. (*State, ex rel., v. Dolese Bros. Co.*, 151 Kan. 801, 102 P. 2d 95.)

Plaintiffs' petition also alleged and defendants' demurrer admitted that the statutory provisions which require that the report of the engineers of the project be filed by the city with the public utilities commission (now called the state corporation commission) as required by law have not been complied with (G. S. 1935, 12-636), and that the contemplated improvements, included in the ring-dike project for North Topeka, have not been investigated by the state commission's engineer, nor has he approved the same, although such approval seems to be a prerequisite to the validity of such project. (G. S. 1935, 12-637 *et seq.*)

What excuse can be offered by defendants for want of compliance with these provisions of statute? It may be conceded that the federal government does not ordinarily need to conform to local statutory regulations before setting about the construction of projects which are exclusively of national concern. But in the particular instance under present consideration, the federal statute quoted above declares that such a flood-control project as is contemplated for North Topeka is to be undertaken in coöperation with the state and its political subdivisions and localities. Such coöperation requires the full accord of the state, the county, the city, the drainage districts concerned. The coöperation of the state includes the approval of the officers in whom it has vested authority to act in its behalf as the public welfare may seem to require—the chief engineer of the division of water resources, and the approval of the state corporation commission. Without the considered ap-

proval of the proposed "ring-dike" project by these state officials, the state's coöperation with the federal government in this project of flood control in North Topeka as contemplated by the federal statute manifestly does not exist. Certainly the recital in the Topeka city ordinance No. 6817, set out above, that *the state of Kansas* as well as the city of Topeka gives its assent to the project is a nullity. The city has not been authorized to speak for the state of Kansas. Only the state's own designated officials could give an effective sanction thereto. (See analogous case of *State, ex rel., v. Zachritz,* 135 Ohio St. 580, 22 N. E. 2d 84.)

As this cause now stands, it is clear that this court cannot do otherwise than hold that plaintiffs' petition did state a cause of action which could not be withstood by defendants' demurrer thereto, and the trial court's ruling thereon was erroneous. And this conclusion necessarily disposes of this litigation for the time being, and the other legal questions raised in the pleadings need not be decided.

On the error assigned on the ruling quashing the service of summons on the Secretary of War the judgment is affirmed.

On the error assigned on the ruling on the demurrer to so much of plaintiffs' cause of action as was predicated on the want of the approval of the project by the chief engineer of the division of water resources and the failure of defendants to conform to the statutory requirements of G. S. 1935, 12-636, and the consequent want of favorable action by the state corporation commission pursuant thereto as prescribed in G. S. 1935, 12-637, the judgment is reversed.